Everett Ray Poe

*v.*

Atlantic Coast Line Railroad Company and Louisville & Nashville Railroad Company, D/B/A Clinchfield Railroad Company.

(*Knoxville,* September Term, 1958.)

Opinion filed June 5, 1959.

DAVID M. GUINN, and THOMAS E. MITCHELL, Johnson City, for petitioner.

COX, EPPS, POWELL & WELLER, Johnson City, HARRY N. FORTUNE, Erwin, for respondents.

Mr. Justice Burnett delivered the opinion of the Court.

A petition for certiorari has been heretofore granted in this case. Briefs have been filed and arguments heard and we now have the matter for disposition.

This is a railroad crossing accident wherein personal injuries and property damages were caused to the plaintiff growing out of a collision between the train of the respondents and the automobile of the petitioner which was being operated by him. The cause was submitted to the jury by the trial judge on three counts of the declaration to-wit: the common law count, and a second count for damages to the automobile, and the third count is a statutory count alleging the failure of compliance by the railroad company with the provisions of Section 65-1208, T.C.A., and Section 65-1209, T.C.A. The jury rendered

judgment in favor of the plaintiff for $2,500 which was approved by the trial judge. On appeal the Court of Appeals reversed because, in that Court's opinion, there was no evidence of negligence to submit to the jury on any one of these three counts. The primary basis for the Court of Appeals reaching this conclusion is gathered from the following paragraph from their opinion. That paragraph is:

"As we see this record, the negative evidence offered to prove negligence of the defendant, or to prove the failure to observe statutory precautions, or to perform every precautionary duty required of it, is not only destroyed by the positive proof, but that it is so inconsistent with the positive proof as to make the positive proof uncontradicted."

On the morning of May 4, 1956, plaintiff was operating his 1956 4-door Oldsmobile automobile on Sevier Street in Johnson City, Washington County, Tennessee, when he approached the railroad tracks of the defendant railroad which crossed that street, just north of its intersection with Ashe Street. The railroad crossing.was marked and designated 'Railroad Crossing' and there were seven tracks crossing the street at this point including the main line. The defendant alleges that he approached this crossing, stopped, looked and listened and did not see anything and that there was a box car on one of the spur tracks to his left, that is, the direction from which the train came which hit him; that he drew on up to the main line and stopped again and did not see or hear anything and then started out and just as the car got on the track that the train hit the left front of his car and dragged it some distance down the track (a distance of

2 diesel engines and some 4 freight cars). It is alleged that he got on this track prior to the time that the train struck him and that he was an obstruction on the track. He says and the proof shows that the car was dragged down the track some 45 or 50 feet from where he was hit. The proof also shows that the car had a value of some $3,500 before the accident and only about $1,100 after the accident. The plaintiff likewise received minor injuries.

A reading of this record has convinced us that the Court of Appeals erroneously considered the evidence in this case as being negative and thus not sufficient material evidence to submit the question to the jury. A brief recap and quotation from some of this evidence will suffice. The plaintiff on direct examination testified insofar as here applicable as follows:

"When I approached that railroad crossing sign I put on my brakes and stopped there and looked both ways."

"Well, I looked off to my right to see if there were any signals on that sign and there wasn't any crossing signals of any kind, because I was under the impression that most of these crossings * * *"".

(Objection entered which was ruled on by the Court, and then this).

"No, there wasn't any crossing signals on there whatsoever."

"Q. Did you see anything? A. I didn't see a thing.

"Q. Did you hear anything? A. No, I didn't.

"Q. Now, how were the windows on your car? A. My left vent was open and the left window was down, oh, about an inch or two inches.

"Q. Was the window on your side down? A. On my left hand side and the right hand vent was open. Both my vents were open.

"Q. Alright, and you say you didn't hear anything. Then what did you do? A. I proceeded on down to the next track, and stopped."

"Q. Now, Everett, what did you do then? A. I proceeded on down to the crossing, I mean the next track."

"Q. Now, as you approached the next crossing there, did you observe anything to your left? A. There was—well, there was one or two box cars on the left hand side, parked there."

He then says that this box car which was on his left was some 15 to 20 feet to his left. On page 12 of the transcript he was asked:

"Q. Everett, how far could you see in the direction of west with those boxcars parked there as you testified? A. Well, I couldn't see the train and they obstructed my view, they completely obstructed my view to my left."

"Q. Alright, then what did you do, Everett? A. After I looked both ways I proceeded on across the crossing.

"Q. Now first, did you stop again? A. No. I didn't.

"Q. You didn't stop, about what was your speed then? A. Well, I had just started out."

"Q. Now I mean prior to the time you crossed this track on which the boxcars were parked, what did you do? There are several tracks there, Your Honor, he is confused on tracks. A. I looked, well, I looked both ways and looked back to the front and started out."

And then he was asked if he saw anything and he said:

"A. I didn't see anything."

"Q. Alright, then what did you do, Everett? A. I proceeded on across the track and that was when I was hit by the train.

"Q. When you were hit by the train. Alright, now on which track were you struck by the train? A. The main line."

And then on page 14 of the transcript he says that his left front fender was hit:

"My left front fender and wheel—I had just gotten across the—my left front fender had just gotten across the track, the first track, the nearest rail on the main line."

"Well, my first impulse was to hit my brakes and I put my foot on my brakes and I didn't take them off, well, I didn't take them off till I got out of the car.

"Q. Did you see anything? A. The only thing I saw was a quick flash of light.

"Q. Quick flash of light? A. Just at the same moment I was hit I saw just a light."

When asked if he saw that there was a headlight he said that he did not. He was asked about what happened when the engine struck him and he said:

"It was hit in the front, left hand side, and it completely whipped my car around and hit the side of the engine. In other words, when the train hit the front of my car it just flipped it all the way around and my left side of my car was right up beside the train."

He then says that after he was hit he looked outside and formed his judgment that the train was going from 15 to 25 miles per hour. He was asked how far the train went before it stopped after hitting him and his answer is:

"Diesel section plus four or five cars."

■ There is other testimony of similar import in the record by a deputy sheriff and others who were close. Then there is testimony of some people who lived near the track that they heard one little toot and then just a few minutes afterwards they heard the crash and thought it was couplings of a car coming loose. Obviously this direct testimony of the plaintiff, regardless of what he said on cross examination, (as a matter of fact he stuck by this story pretty well) makes a question for the jury. The record is replete with a number of witnesses offered on behalf of the railroad that all signals were given, the bell rang and the whistle was blown and those things. Other witnesses say that the plaintiff ran into the side of the engine rather than the engine striking the car. This fact was testified to by two or three witnesses as to where the marks were on the engine. Another witness, not employed by the railroad, says he saw the car hit the train. These things, though, and this testimony, all is in direct conflict with the plaintiff and his witnesses. Under such a state of facts this makes a question for the jury.

As so often said, the rule in this State requires trial judges and appellate judges, in considering a motion by a defendant for a directed verdict as is here, and as was sustained by the Court of Appeals, to look to all the evidence, to take as true the evidence for the plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for the plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion for a directed verdict must be denied. There are many cases in which this or similar statements have been made by this Court over a period of years. Some of them are *Wildman Mfg. Co. v. Davenport Hosiery Mills,* 147 Tenn. 551, 249 S.W. 984; *Walton & Co. v. Burchel,* 121 Tenn. 715, 121 S.W. 391; *Provident Life & Accident Ins. Co. v. Prieto,* 169 Tenn. 124, 83 S.W.2d 251; *Osborn v. City of Nashville,* 182 Tenn. 197, 185 S.W.2d 510, and many others.

Thus it is under this well established rule, in view of the evidence of the plaintiff alone that was quoted above, (and there is other evidence of a similar import herein) this made a fact question for determination of the jury.

Now we come to what the rule in this State is in reference to what the Court of Appeals determined the case on, that is, that the only evidence on behalf of the plaintiff was negative evidence which was overcome by positive evidence. The rule in this State as announced by this Court in the case of *Tennessee Cent. R. Co. v. Page,* 153 Tenn. 84, 282 S.W. 376, 377, in an opinion prepared by the late Mr. Justice Cook is:

"We concur in the conclusion of the Court of Appeals that the testimony of witnesses that they did not hear the whistle or bell as the train approached the station is not negative evidence. After stating that they were in position to hear and observe, and that they could have heard the whistle and bell had either been sounded, the witnesses testify that they heard neither whistle nor bell. They gave the reason which lies at the basis of their direct negative assertion of fact, that is, that they did not perceive the sound of the whistle or bell, that they would have done so had they sounded as the train approached the station. Their evidence was competent and probative of the fact that subsection 3, section 1574, Shannon's Code, was not observed."

The direct proposition was ruled on in 1941 in a Federal case, that of *Illinois Cent. R. Co. v. Sigler*, 6 Cir., 122 F.2d 279, in an opinion by the late Judge Zen Hicks, Circuit Court of Appeals, who was very familiar with Tennessee law. Insofar as we can find and know this is the applicable rule as applied judicially in this State. We hold therefore that under this rule that the evidence above quoted and other evidence herein is admissible and forms a material fact question for consideration of the jury.

In the Court of Appeals two errors were assigned as to portions of the charge of the trial court to the jury in this case. The Court of Appeals deemed it unnecessary to rule on these questions in view of the conclusion which they reached. The first portion of the charge complained of is:

"It is the theory of the plaintiff in the case under the first count of his declaration that the Railroad Company was guilty of negligence in a number of instances under the common law in that they failed to keep a proper lookout ahead for traffic at the crossing which they knew or should have known to be heavily traveled, in that the fireman was operating at the controls of the engine and operating said train at an excessive rate of speed, and failing to keep the train under control, and failing to give any signals or warnings or indication of the approach of the train, and leaving said box cars standing in such a position as to obstruct the view of said crossing, and failing and neglecting to take any steps to prevent striking the plaintiff, all of which was negligence at common law. * * *"

We think this a proper charge setting forth the theory of the plaintiff of negligent acts on behalf of the defendant. It is a question of, under the proof and facts, how this evidence was and whether or not if there was any evidence of negligence on the part of the Company in doing these various things. The question of box cars being there is a question to be taken into consideration by the jury in weighing the evidence in the case. The mere fact that that is part of the thing does not make the box cars being there positive negligence upon which the plaintiff's case could hinge. This was not an independent ground of recovery but could be taken into consideration with all the other things.

It is next said that the following portion of the charge was error:

"* * * On the other hand, if the acts of the plaintiff and defendant, occurring and concurring together,

caused the accident, that is, if the plaintiff was guilty of any negligence that contributed proximately to his accident he could not recover except in one instance and that is where the Railroad Company has violated the precautionary safe driving statutes with reference to sounding the alarm where the obstruction appeared upon the tracks, if they violated that section of the Code and haven't shown to your satisfaction that they complied with it as much as possible, then that would not bar recovery but would go in mitigation or lessen the damages. In all other cases it would bar a recovery if the plaintiff is guilty of any negligence that contributed proximately to his own accident. * * *''

Of course the complaint about this portion of the charge is that it was the duty of the trial judge to tell the jury that in the case of the concurrence of negligence under the precautionary statute applying to railroads at crossings that they *"must"* mitigate the damages if they found there was contributory negligence on the part of the plaintiff. We have fully covered this question in the case of *McClard v. Reid,* 190 Tenn. 337, 229 S.W.2d 505, and for the reasons therein expressed feel that the charge as given is erroneous. Thus it is that the case must be reversed and remanded to the trial court for another trial with the instruction corrected if and when given again.

It seems to us that the word "would" as used in this instruction (taking into consideration its use in other aspects herein) is not imperative as it must be.

It has been suggested in conference that this is not here reversible error because of the Harmless Error Statute, Sec. 27-117, T.C.A. We have concluded that

there is not enough difference between the damages proved and the verdict of the jury to show that they in fact applied the term ''would'' as imperative. The car was shown to be worth before the accident $3,800 and after the accident $1150. The verdict was $2,500. Personal injuries, doctor bills and other damages were very small. The plaintiff only claimed to be shaken up and nervous and black eyes; doctor bills of less than $25; tools lost of from $25 to $50 and a few little things. The jury could have reasonably found from the proof that his maximum damage was as they found.

The opinion of the Court of Appeals is reversed and the cause remanded to the trial court for another trial consistent with this opinion.