**Victoria Price STREET, Plaintiff,**

v.

**NATIONAL BROADCASTING COMPANY, Defendant.**

**No. CIV–4–76–31.**

United States District Court,
E. D. Tennessee,
Winchester Division.

July 8, 1977.

On Motion for Directed Verdict
July 11, 1977.

On Motion for Directed Verdict After All Evidence Aug. 11, 1977.

Don Wyatt and Raymond W. Fraley, Jr., Fayetteville, Tenn., for plaintiff.

John W. Wheeler and Robert R. Campbell, Knoxville, Tenn., and Arthur E. Simms, Jr., Fayetteville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The jurisdiction of this Court was invoked properly herein on the basis of the diverse citizenship of the adversary parties and the requisite amount. 28 U.S.C. § 1332(a)(1), (c). The plaintiff claims *inter alia* that the defendant invaded her privacy. The defendant moved for a dismissal of the

plaintiff's action, in so far as it asserts a claim of invasion of privacy, on the ground that it fails to state a claim upon which relief can be granted, Rule 12(b)(6), Federal Rules of Civil Procedure, in that Tennessee gives the plaintiff no right of action for privacy-invasion.

A federal court must apply in a civil action in which its jurisdiction is invoked on the basis of diversity of citizenship and required amount the substantive law of the state in which such federal court sits. 28 U.S.C. § 1652.[1] The rules of decision established by judicial decisions of the highest state courts constitute the "law" of a state as well as those prescribed by statute. *Erie Railroad Co. v. Tompkins* (1938), 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188.

Tennessee gives no right of action for invasion of privacy by statute. Neither has its highest court recognized specifically the existence of a common law right of action for invasion of privacy.

This Court anticipated that, when confronted directly with the issue, the Tennessee Supreme Court would follow the prevailing authorities and recognize a right of action for invasion of privacy. *Cordell v. Detective Publications, Inc.*, D.C.Tenn. (1968), 307 F.Supp. 1212, 1215[1, 2], affirmed C.A. 6th (1969), 419 F.2d 989 (see esp., at 990[1]). This conclusion became unsettled subsequently when the intermediate civil appellate court of Tennessee stated pointedly: " * * * the tort of 'invasion of privacy' has not been recognized in this State. * * * " *Ruth Ann Nichols, Et Al.*, appellants, v. *Memphis Publishing Company*, appellee, C.A.Tenn., western section, opinion filed October 6, 1976. " * * * A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which

are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances a federal court is not free to reject the state rule merely because it has not received the sanction of the highest court, even though it thinks the rule is unsound in principle or that another is preferable. State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule * * *.

" * * * Where an intermediate appellate court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced that the highest court would decide otherwise. * * * " *West v. American Telephone & Telegraph Co.* (1940), 311 U.S. 223, 232, 237, 61 S.Ct. 179, 183[4, 5], [6], 85 L.Ed. 139.

Some five weeks after the intermediate Court of Appeals of Tennessee asserted that the tort of invasion of privacy had not been recognized in Tennessee, the Tennessee Supreme Court, its highest court, in commenting upon its earlier decision in *Martin v. Senators, Inc.* (1967), 220 Tenn. 465, 418 S.W.2d 660, reiterated that *Martin* had " * * * assum[ed] the existence of the common law right of action for invasion of privacy. * * * " *Swallows v. Western Elec. Cp., Inc.* (Tenn., 1976), 543 S.W.2d 581, 583[1]. Thus, this Court remains convinced that, when and if confronted directly with the issue, the highest court of Tennessee would decide that there is a right of action in Tennessee for the tort of invasion of privacy.[2]

For such reason, the aforementioned motion of the defendant hereby is

OVERRULED.

---

1. "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652.

2. Thus, the decision in *Nichols, supra*, may be said to constitute " * * * merely the opinion of the [two] judge[s] who filed it and is binding only upon the parties to that particular litigation, * * * " one judge having concurred only in the result reached therein. *Southern Railway Company v. Foote Mineral Company*, C.A. 6th (1967), 384 F.2d 224, 228[5].

## ON MOTION FOR DIRECTED VERDICT

The defendant moved at the conclusion of the plaintiff's proof for a directed verdict, Rule 50(a), Federal Rules of Civil Procedure. The principal ground of the motion was that the plaintiff had produced insufficient evidence to permit the jury to find the defendant guilty of negligence or some greater fault in the publication of statements concerning her which she claims were defamatory.

■ It was conceded at the outset by the defendant that the proof thus far had not shown that the plaintiff was a "public figure" as that term is applied to allegedly libeling broadcasters and publishers. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789; *Time, Inc. v. Firestone* (1976), 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154. Thus, as to her libel claim, the plaintiff was not required to prove malice on the part of the defendant. Such malice is required proof to support the plaintiff's claim for invasion of her privacy, however. *Cantrell v. Forest City Publishing Co.* (1974), 419 U.S. 245, 251, 95 S.Ct. 465, 469, 42 L.Ed.2d 419; *Time, Inc. v. Hill* (1967), 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456.

■ The defendant is correct in its assertion that the constitutional guarantees of freedoms of speech and the press required the plaintiff to prove negligence on the part of the defendant in publishing the allegedly libelous matter concerning her. The plaintiff claimed she has produced evidence that the defendant was thusly negligent, *infra*.

It was stipulated pretrial that the defendant broadcast on nationwide television the program, *Judge Horton and the Scottsboro Boys*, on April 22, 1976 and again on January 3, 1977, in which a person named "Victoria Price" was portrayed, and that the plaintiff Ms. Victoria Price Street is the "Victoria Price" thus portrayed. There was evidence presented by the plaintiff that the portrayed "Victoria Price" was, *inter alia*, described therein as " * * * a whore, * * " that the crime of perjury was imputed to her, and that she was described by another character in the portrayal as " * * * a bum.

* * *" The defendant conceded the program published included " * * * inaccuracies. * * *"

■ The problem was, even if libelous inaccuracies were shown by the evidence, it still remained for the plaintiff to show proximate fault on the part of the defendant in publishing those statements before a question for the jury was presented. The plaintiff appeared to be laboring under the misapprehension that, if she had shown she has been defamed she is entitled to an award by the jury of damages without any showing by her of fault on the part of the defendant. The state of Tennessee was free to design for itself the appropriate standard of liability of a publisher or broadcaster of defamatory falsehood injurious to a private individual, but our state may not impose liability without a showing of specific fault. *Gertz v. Robert Welch, Inc., supra*, 418 U.S. at 437–438, 94 S.Ct. at 3010[6].

■ An intermediate civil appellate court of Tennessee has established as the appropriate standard in our state of such liability the negligence of the publisher or broadcaster. *Ruth Ann Nichols, Et Al.*, appellants, v. *Memphis Publishing Company*, appellee, C.A.Tenn., western section, opinion filed October 6, 1976. The datum provided by this decision is not to be disregarded by this federal court sitting in Tennessee, unless it is convinced that the Tennessee Supreme Court would decide otherwise. *West v. American Telephone & Telegraph Co.* (1940), 311 U.S. 223, 237, 61 S.Ct. 179, 183[6], 85 L.Ed. 139. Although, when confronted directly with the issue, it is anticipated that the Tennessee Supreme Court might include in Tennessee's standard of liability for broadcasters and publishers for defamatory falsehood injurious to a private individual higher elements other than simple negligence, it is anticipated assuredly by this Court that a showing of simple negligence on the part of the publisher would certainly be required.

■ The aforementioned Tennessee rule appears to be that insofar as private individuals and print publishers or broadcasters

are concerned, before a plaintiff can recover for the publication of a libel either in print or by electronic telecommunication, the plaintiff must show (1) that the publication was libelous of the plaintiff and (2) that the publisher or broadcaster did not act with reasonable care under all the circumstances in the publication of the false and defamatory information about the plaintiff. *Ruth Ann Nichols, Et Al.*, appellants, v. *Memphis Publishing Company*, appellee, *supra*. It has been suggested further by another section of the Tennessee intermediate civil appellate court that, in lieu of predicating liability of a broadcaster or publisher without a showing of specific fault, " * * * the failure to exercise due care would be a proper standard. * * * " *Sherry L. Verran*, appellant, v. *Press, Inc., Etc.*, appellee, C.A.Tenn., eastern section, opinion filed April 19, 1977.

Unless the plaintiff shows, therefore, that someone in the NBC organization was negligent in failing to ascertain that the allegedly false and defamatory statements concerning Ms. Street were false and defamatory, i. e., that NBC's personnel acted reasonably in ascertaining the truth or falsity or defamatory nature of the aforementioned statements concerning Ms. Street before publishing them, or that personnel of NBC were guilty of some fault greater than that of simple negligence, then she cannot recover herein on her libel claim. The plaintiff urges that her proofs have shown facts sufficient for the jury to find, by reasonable inference from established facts, that NBC's personnel were negligent in ascertaining the truth or falsity and the defamatory nature of the statements of which Ms. Street complains. She urges that the official transcripts of the several criminal trials, on which the program was based, are in evidence before the jury; that the script of the allegedly offensive programs as well as filmed versions of the latter of the two programs which were published are also in evidence before the jury; and that, from a comparison of the script and film with the trial transcripts, the jurors may reasonably infer proximate negligence on the part of NBC's personnel from these established facts.

■ As the Court, in considering a motion for a directed verdict is required to view the evidence as well as all inferences deducible properly therefrom in the light most favorable to the plaintiff, *Taylor v. Cirino*, C.A. 6th (1963), 321 F.2d 279, 281[1], the Court was reluctant to reject the plaintiff's arguments at this juncture although it is not persuaded convincingly of their merit. Accordingly, the motion of the defendant for a directed verdict as to the plaintiff's claim of the defendant's invasion of her privacy and her claim of slander hereby is SUSTAINED. See *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 1325[2, 3], 20 L.Ed.2d 262, cited in *Gertz v. Robert Welch, Inc., supra; Gearhart v. WSAZ, Inc.*, D.C.Ky. (1957), 150 F.Supp. 98, 112[27], affirmed C.A. 6th (1958), 254 F.2d 242. Its motion as to the plaintiff's claim of libel hereby is OVERRULED.

## ON MOTION FOR DIRECTED VERDICT AFTER ALL EVIDENCE

This is a civil action by Ms. Victoria Price Street for damages from the National Broadcasting Company (NBC) for libel, slander and an invasion of her privacy. The litigating parties are deemed citizens of different states, and the requisite jurisdictional amount is present. 28 U.S.C. §§ 1332(a)(1), (c). Thus, this Court had jurisdiction.

Ms. Street's claims of false defamation stem from the publication by NBC on its national television network of a 120-minute motion-picture entitled, "Judge Horton and the Scottsboro Boys." This cinema undertook to portray on April 22, 1976 through dramatic acting historical events surrounding the retrial in 1933 in Morgan County, Alabama of a criminal action against the late Mr. Haywood Patterson for allegedly raping Ms. Street and her railroad hobo-ing companion, the late Ms. Ruby Bates. The late Honorable James E. Horton presided at such retrial and was portrayed as "the star" of the presentation.

■ By sustaining partially NBC's motion for a directed verdict at the conclu-

sion of all the plaintiff's proof, Rule 50(a), Federal Rules of Civil Procedure, the Court withdrew from the jury the issues of slander and invasion of privacy.[1] Although the Court was unpersuaded at that time that NBC had been shown to be guilty of any fault in its publications concerning Ms. Street, with perhaps an excess of caution, NBC's motion as to the plaintiff's claim of libel was overruled at that point in the trial. See memorandum opinion of July 11, 1977 herein.

After the reception of all the evidence herein, NBC moved again for a directed verdict as to the remaining issue of libel, stating its grounds therefor. Rule 50(a), *supra*. The Court granted that motion, and judgment was entered that Ms. Street take nothing from NBC.

 The initial task of the Court was to consider[2] whether the proof reflected that Ms. Street was, at the time of either publication[3] of the allegedly defamatory material concerning her, a public figure. If the Court had so found, Ms. Street would have been under the heavier burden of proving that any false and defamatory statement concerning her was made by NBC " * * * 'with knowledge that it was false or with reckless disregard of whether it was false or not.' * * *" *Time, Inc. v. Firestone* (1976), 424 U.S. 448, 453, 96 S.Ct. 958, 964, 47 L.Ed.2d 154, 162[1b], n. 2.

It was contended by NBC that the so-known Scottsboro Boys' Case was a *cause célèbre* in American history which attracted worldwide attention and produced two hallmark court decisions in the field of constitutional law. This was shown by the proof (and could have been noticed judicially by the Court, so well-known are those facts). The argument continued that, as Ms. Street was one of the two principal witnesses for the prosecution in that famous proceeding, she had been thrust into the role of a public figure.

Although it is patent that some person might become involuntarily a public figure because of events by which he or she is swept-up, those who attain this status usually have assumed voluntarily roles of especial prominence in the conduct of social affairs. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789, 808[12]. Those who come to public attention through the medium of litigation, either only while it is in progress or thereafter in a general sort of way, definitely may constitute public figures; but, the majority of persons who are the objects of attention because of litigation are more likely to resemble Ms. Street who, it must be assumed, was drawn into the public forum against her great preference. See *Time, Inc. v. Firestone, supra,* 424 U.S. at 457, 96 S.Ct. at 966, 47 L.Ed.2d at 165[6, 7].

---

1. Televised defamation occurring in a prepared script (as opposed to television defamation of a spontaneous utterance) is libel and not slander. *Gearhart v. WSAZ, Inc.,* D.C.Ky. (1957), 150 F.Supp. 98, 112[27], affirmed C.A. 6th (1958), 254 F.2d 242.

 Although the events in and surrounding the Scottsboro Boys' cases were matters of public interest and bear newsworthy character in their retelling, Ms. Street's proof was silent as to any indication that NBC's publication of the programs involved was motivated in any way by malice toward her on the part of NBC's personnel. Before she was entitled to recover damages for an invasion of her privacy, she was required by the law to meet the "malice test" established by *Time, Inc. v. Hill* (1967), 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456. As stated, Ms. Street had made no showing that NBC's personnel were aware that anything shown concerning her was false, and there was

insufficient evidence before the jury to permit an inferential finding that anyone at NBC acted in reckless disregard of whether such material was true or false. Thus, the plaintiff's claim of invasion of privacy failed for lack of adequate proof to support a jury verdict. See and *cf.* also *Cantrell v. Forest City Publishing Co.* (1974), 419 U.S. 245, 251, 95 S.Ct. 465, 469, 42 L.Ed.2d 419.

2. The Court, rather than the jury, was required to make such a determination in the first instance. *Rosenblatt v. Baer* (1966), 383 U.S. 75, 88, 86 S.Ct. 669, 677[12], 15 L.Ed.2d 597.

3. NBC presented the motion-picture involved, with certain deletions, a second time on January 3, 1977 after the commencement of this lawsuit. However, there was no deletion therefrom of the statements of which Ms. Street complains most vehemently.

Whatever may have been Ms. Street's status in that regard 40 years ago, at the conclusion in 1937 of the last of the Scottsboro Boys' cases in which she was a participant, she disappeared completely from public view. This was true, to the extent that a letter addressed to her in the village of Flintville, Tennessee, in the vicinage of which she resided for many years, by Dr. Dan T. Carter, a witness herein, was returned to him, marked "addressee unknown." When his other considerable efforts to ascertain Ms. Street's whereabouts also proved unfruitful, Dr. Carter concluded that she was deceased and included this misstatement of fact in 1969 in his book,[4] "Scottsboro—A Tragedy of the American South." Thus, at the time Ms. Street surfaced publicly to assert her rights in this lawsuit, she had ceased to have whatever status she once had occupied as a public figure. The Court, accordingly, ruled that the plaintiff was not a public figure within the Supreme Court's definition of that status.

The next consideration was whether there was any evidence in the entire record upon which the jury could have based a finding that NBC had published a libel concerning Ms. Street and have awarded her compensatory damages.[5] In this consideration, the applicable law of Tennessee had once been that the mere publication of libel about a person was sufficient to support a recovery without any showing of specific fault on the part of the publisher and without proving any resulting damages whatever. See e. g., *Brown v. Newman* (1970), 224 Tenn. 297, 454 S.W.2d 120, 121–

122[1]; *Electric Furnace Corp. v. Deering Milliken Research Corp.*, C.A. 6th (1963), 325 F.2d 761, 764–765[2]. Liability without a showing of either fault or actual damages in libel cases tended, however, to stifle freedom of speech and the freedom of the press on the part of publishers and broadcasters. They are expected to energize those freedoms for the benefit of the public and not to indulge in self-censorship to avert the threat of being sued for damages.

To accommodate the right of the individual person to protect himself through court action from libelous statements to the requirements of these guaranties of freedom of the flow of information in our Constitution, First Amendment,[6] the Supreme Court required the states to refashion their libel and slander laws in such a way that the public would not be deprived of those important benefits. In effect, the states were advised that they remained free to design their laws on these subjects however they desired, so long as (1) they did not impose strict liability without a specific showing of fault on the part of a publisher or broadcaster, and so long also as (2) they did not permit damages from libel to be presumed by juries from mere publication. *Gertz v. Robert Welch, Inc., supra; Time, Inc. v. Firestone, supra.*

This Court, in a diversity civil action such at this, is required to apply the substantive law of Tennessee, *C. I. R. v. Stern* (1958), 357 U.S. 39, 45, 78 S.Ct. 1047, 1051[2], 2 L.Ed.2d 1126, defining the appropriate standard of liability of NBC for defamatory falsehoods which injured Ms. Street as a

---

4. It is noticed judicially that the belief had been expressed earlier in other volumes that Ms. Street, as well as Ms. Bates, had died, see *ergo.*, "A Pictorial History of the World's Great Trials," by Brandt Aymar and Dr. Edward Sagarin (Bonanza, 1967), p. 275. Of course, it was not libelous of Ms. Street for NBC to have reported that she was deceased when, in fact, she is alive. Prosser, Law of Torts (4th ed.) 739, § 111, citing *O'Neil v. Edmonds*, D.C.Va. (1958), 157 F.Supp. 649; *Cardiff v. Brooklyn Eagle* (1947), 75 N.Y.S.2d 222, 190 Misc. 730; *Lemmer v. The Tribune* (1915), 50 Mont. 559, 148 P. 338; *Cohen v. New York Times Co.* (1912), 153 App.Div. 242, 138 N.Y.S. 206.

5. Ms. Street could have recovered only such actual compensatory damages as she proved she sustained; she demonstrated no malice toward her on NBC's part, which was necessary to support an award of punitive damages. *Gertz v. Richard Welch, Inc., supra.*

6. Television entertainment, as well as news reports, is under the blanket of First Amendment protection. *Zacchini v. Scripps-Howard Broadcasting Co.* (1977), 433 U.S. 562, 578, 97 S.Ct. 2849, 2859, 53 L.Ed.2d 965, 978 (1977).

private individual. This Court notices judicially that Tennessee has no statute establishing this standard; thus, our source of reference is the unwritten law of Tennessee as declared by its highest court. *Erie R. Co. v. Tompkins* (1938), 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194.

This Court notices, judicially again, that the Tennessee Supreme Court has not yet established such a standard; however, Tennessee's intermediate civil appellate court has declared or suggested a standard. The data provided by its decisions are not to be disregarded by a federal court conducting a diversity of citizenship trial in this state, unless the Court is convinced that the Tennessee Supreme Court would decide in a contrary manner. *West v. American Telephone & Telegraph Co.* (1940), 311 U.S. 223, 237, 61 S.Ct. 179, 183[6], 85 L.Ed. 139. In the final analysis, this Court must anticipate the law which the Tennessee Supreme Court will apply. *City of Kingsport v. SCM Corporation,* D.C.Tenn. (1972), 352 F.Supp. 288, 290[2]; see also *Orfield v. International Harvester Co.,* C.A. 6th (1976), 535 F.2d 959, 965[2].

The data provided by the Tennessee Court of (civil) Appeals are persuasive. Two sections of that tribunal, the western and the eastern sections, have declared or suggested that the appropriate standard of fault in a lawsuit for libel by a publisher in this state is that of negligence. *Ruth Ann Nichols, Et Al.,* appellants, v. *Memphis Publishing Company,* appellee, C.A.Tenn., western section, opinion filed October 6, 1976; *Sherry L. Verran,* appellant, v. *Press, Inc., Etc.,* appellee, C.A.Tenn., eastern section, opinion filed April 19, 1977. Judge Nearn stated *inter alia* for the western section (with one fellow-judge concurring and one fellow-judge concurring only in the result reached in the lawsuit):

> * * * [I]nsofar as newspapers and private individuals are concerned, before a recovery can be had by the individual for the publication of libel, not only must the [published] article be libelous, but it must be shown that the publisher did not act with reasonable care under all the circumstances in the publication of the false and defamatory article. "All the circumstances" would include such things as the importance of the news item, the printing deadline, etc. * * *

*Ruth Ann Nichols, Et Al. v. Memphis Publishing Company, supra.* In a per curiam opinion, the eastern section stated *inter alia:*

> * * * [B]efore the [p]laintiff is entitled to compensatory damages it is necessary to show that the [d]efendants acted with some fault in publishing the [libelous] material. * * * Because prior to *[New York Times v.] Sullivan* [(1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, motion denied 376 U.S. 967, 84 S.Ct. 1130, 12 L.Ed.2d 83] Tennessee in defamation cases adhered to the rule of strict liability, * * * it is suggested that failure to exercise due care would be a proper standard. * * *

*Sherry L. Verran v. Press, Inc., Etc., Et Al., supra.* Although the Tennessee Supreme Court may be anticipated reasonably to include additionally in any rule it establishes for this type of lawsuit degrees of fault higher than simple negligence, it appears that the very minimal requirement it will declare is that in a libel action by a private individual, a broadcaster must have been shown to have been guilty of a failure to exercise due and reasonable care under the circumstances.

Negligence, in the sense of failing to use due and reasonable care under the circumstances, has long been the prevailing rule in tort actions in Tennessee. *Nashville, C. & St. L. Ry. Co. v. Wade* (1913), 127 Tenn. 154, 153 S.W. 1120; *Dixon v. Lobenstein* (1939), 175 Tenn. 105, 132 S.W.2d 215, both cited *inter alia* in *Duckworth v. Greyhound Lines, Inc.,* C.A. 6th (1975), 469 F.2d 424, 426[4]. Furthermore, the Tennessee Supreme Court, as presently constituted, has followed an unswerving course of applying the law as mandated by the Supreme Court of the United States, even when the result was an overruling of its own precedent. Examples of this are *McKeldin v. State* (Tenn., 1974), 516 S.W.2d 82, where

such a precedent, holding that a preliminary hearing is not a critical stage in the prosecution of a criminal action, was overruled in the light of *Coleman v. Alabama* (1970), 339 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, and the very recent decision in *State of Tennessee, petitioner, v. Keith Campbell, alias Batman, respondent,* from Giles Circuit, decided April 25, 1977.

As the Supreme Court of the United States has declared any state rule of law which allows a private individual to recover damages from a broadcaster without any showing of specific fault and to presume damages from the mere publication[7] of a defamatory statement to be impermissible constitutionally, this Court has no difficulty in anticipating that the Tennessee Supreme Court will establish, harmoniously with that mandate, a standard of fault as a prerequisite to such a recovery. Therefore, it is anticipated by this Court that, when confronted with the issue, the Tennessee Supreme Court will rule that a private person has no right of action against a broadcaster which publishes defamatory statements concerning that person in the absence of a showing of negligence on the part of the broadcaster and a further showing that such person was actually injured as a proximate result of such publication.

The Court next took the strongest legitimate view of the evidence in the light most favorable to Ms. Street and measured it against the foregoing standard. *Taylor v. Cirino,* C.A.6th (1963), 321 F.2d 279, 281[1]; *Poe v. Atlantic Coast R. R. Co.* (1959), 205 Tenn. 276, 284(2), 326 S.W.2d 461. She proved by direct evidence (in the form of stipulated facts) that NBC published on two occasions statements concerning Victoria Price; that Ms. Street is the "Victoria Price" portrayed therein; and that one or more third persons saw and heard those statements. She presented direct and circumstantial evidence from which the jury might have found reasonably that some of

those statements were false and defamatory of her, and, if they so found, that she was damaged generally and specially as a proximate result of such publications.

A great deal of the motion-picture script written by Mr. John McGreevey presented in somewhat capsulated form some of the testimony at the aforementioned trial as reported generally in Dr. Carter's book. " * * * 'A trial is a public event. What transpires in the court room is public property.' * * * " *Cox Broadcasting Corporation v. Cohn* (1975), 420 U.S. 469, 492, 95 S.Ct. 1029, 1044, 1045[18], 45 L.Ed.2d 328, cited and quoted from in *Connie Ellen Burris, Etc., plaintiff-appellant, v. Thomas A. Hill, Et Al., defendants-appellees,* C.A. Tenn., eastern section, opinion filed April 6, 1977. Mr. McGreevey testified that he altered one word reported by Dr. Carter as having been included in the testimony at the trial; he stated he did this for purposes of " * * * clarification. * * * " The jury might have found that such "clarification" amounted to an accusation of the crime of perjury against Ms. Street. " * * * Tennessee courts recognize that the media is privileged to publish the reports of a judicial forum with absolute immunity so long as the report is true and accurate. * * * " *Burris, Etc. v. Hill, Et Al., supra.*

In other parts of the script, Mr. McGreevey translated material concerning the case of the Scottsboro Boys and " * * * invented * * * " scenes not reported by Dr. Carter in that manner in his book. In one of these "adjusted" scenes, Mr. McGreevey imagined a conversation of defense attorneys over lunch in which one such attorney referred to Ms. Street's having been painted in the former trial as " * * * a whore. * * " Another such scene extraneous to the judicial forum depicted a restroom-conversation between Judge Horton and a witness summoned by the prosecution in which the truthfulness under oath of Ms. Street was questioned by a medical report. Yet anoth-

---

**7.** The mention of Ms. Street's name in a nondefamatory manner in either Dr. Carter's book or the resulting motion picture was not an invasion of her privacy. *Zacchini v. Scripps-How-* *ard Broadcasting Co., supra,* 433 U.S. at 574 n. 11, 97 S.Ct. at 2857 n. 11, 53 L.Ed.2d at 975 n. 11, citing and quoting from Prosser, Torts, 4th Ed. (1971), 806–807.

er was created by Mr. McGreevey, in which a law enforcement officer was seen and heard referring to Ms. Street as " * * * a bum. * * * " NBC could not be held liable for merely giving further publicity to facts about Ms. Street which are matters of public record, *Cox Broadcasting Corporation v. Cohn, supra*, 420 U.S. at 494, 95 S.Ct. at 1045[18]; but those responsible for the script were responsible for portraying fairly the truth of the scenes extraneous to the trial, itself. *Time, Inc. v. Firestone, supra*, 424 U.S. at 458, 96 S.Ct. at 967, 47 L.Ed.2d at 165.

It was established without dispute that NBC purchased from Tomorrow Entertainment, Inc. (Tomorrow) the right to publish the motion-picture in which such statements were made; that Tomorrow purchased from Dr. Carter the right to utilize his afore-titled generally-circulated book for purposes of such motion-picture; that Tomorrow then engaged Mr. McGreevey to prepare from such book a script for such motion-picture; and that Mr. McGreevey predicated such script on such book with no reference to the official transcripts of the trial to which Dr. Carter alluded in his book or any other source.

■ Even assuming the jury might have found that Ms. Street was libeled and damaged in the aforementioned publications as a proximate result of the failure of Mr. McGreevey to exercise due and reasonable care in preparing the script of the motion-picture involved, this provided no probative evidence of attendant fault on the part of NBC. Negligence is never presumed in Tennessee courts from the happening of an event in which someone is injured, *Williams v. Jordan* (1961), 208 Tenn. 456, 346 S.W.2d 583, 586; rather, negligence must have been proved by direct or circumstantial evidence. *Williams v. Jordan, supra; Mullins v. Seaboard Coastline Ry.*, C.A.Tenn. (1974), 517 S.W.2d 198, 201[4], certiorari denied (1974); *Redwood v. Raskind*, C.A.Tenn. (1961), 49 Tenn.App. 69, 350 S.W.2d 414, 417[5], certiorari denied (1961); *Nashville C. & St. L. Ry. Co. v. Sutton*, C.A.Tenn. (1936), 21 Tenn.App. 31, 104 S.W.2d 834, 843[10], certiorari denied (1937). The jurors could not engage in conjecture or speculation as to what may or may not have happened involving NBC. *Buckeye Cotton Oil Co. v. Champagna* (1922), 146 Tenn. 389, 242 S.W. 646, 648[4]; *Wilson v. Nashville, C. & St. L. Ry.*, C.A. Tenn. (1933), 16 Tenn.App. 695, 65 S.W.2d 637, 747[10], certiorari denied (1933); see also *Silcox v. Smith County*, C.A.Tenn. (1972), 487 S.W.2d 652, 654[3], certiorari denied (1972).

In the absence of direct or circumstantial evidence of negligence on NBC's part, the only manner in which the jury could have found NBC proximately negligent was by drawing inferences from the facts which were established by the evidence. " * * * '[A]n inference is * * * a permissible deduction from the evidence before the [C]ourt which the jury may accept or reject or accord such probative value as it desires * * * '. * * * 'Such an inference is itself evidence and remains in the case even though there be evidence opposed thereto with respect to the point involved.' * * * " *Bell Cab & U-Drive-It Co. v. Sloan* (1952), 193 Tenn. 352, 357–358(4), 246 S.W.2d 41.

■ An inferred fact may be the basis of a further inference of the ultimate or sought-for fact. *Stinson v. Daniel* (1967), 220 Tenn. 70, 80[9], 414 S.W.2d 7, cited and quoted in *Trice v. Commercial Union Assurance Company*, C.A. 6th (1968), 397 F.2d 889, 891[7]. But, " * * * forced or violent inferences may not be drawn and * * * an inference is a permissible deduction only when it may be reached by logic or reason. * * * " *Cecil Corley Motor Co. v. General Motors Corp.*, D.C.Tenn. (1974), 380 F.Supp. 819, 827[5]. " * * * An inference results from and depends upon the process of reasoning and * * * cannot be invoked on the basis of speculation and conjecture. * * " *Ibid.*, 380 F.Supp. at 827[6], citing *inter alia First National Bank of Arizona v. Cities Service Co.* (1968), 391 U.S. 253, 284–290, 88 S.Ct. 1575, 1590–1593, 20 L.Ed.2d 569. In short, " * * * [t]he law is settled in Tennessee that * * * a jury will [not] be permitted to indulge in guessing. * * * " *Evensky v.*

*City of Memphis*, C.A.Tenn. (1961), 49 Tenn. App. 24, 31[5], 350 S.W.2d 76, certiorari denied (1961).

■ Counsel for Ms. Street appeared to the Court to have conceded that there was no direct or circumstantial evidence or reasonable inferences which might be drawn therefrom by the jury that NBC had been shown guilty of proximate negligence from anything Tomorrow, Mr. McGreevey[8] and Dr. Carter were shown to have done. It was insisted on her behalf, however, that the jurors could have inferred reasonably that NBC was proximately negligent in the republication of the film involved after it was put on notice by the commencement of this lawsuit that Ms. Street was claiming that such film libeled her.[9] It is true that the amount of care required of NBC increased as the danger of harm to Ms. Street increased. *Silvers v. TTC Industries, Inc.*, D.C.Tenn. (1970), 395 F.Supp. 1312, 1317[7], affirmed C.A. 6th (1975), 513 F.2d 632 (table).

■ It is stipulated that NBC is a corporation. Thus, NBC could act only through persons shown to have been its officers, employees and other agents. *Radio Corporation of America v. Radio Station KYFM, Inc.*, C.A. 10th (1970), 424 F.2d 14, 19 n. 7. Any failure to act of a person shown to have been an officer, employee or other agent of NBC and shown to have failed to act when required in the performance of his or her duties for NBC would have constituted the negligent omission of NBC. *Idem.*

■ It might have been inferred reasonably by the jury that some unidentified official, employee or other agent of NBC knew before the republication of this film that Ms. Street was claiming that some undesignated portions thereof were defaming her through a false portrayal of her in connection with the historical events involved. But, this would have been insufficient to justify a jury verdict for Ms. Street against NBC.

■ It was not enough that her counsel could suggest a possibility of negligence on the part of NBC; the evidence must have been such that it appeared more likely than not that someone at NBC was negligent. Prosser, Law of Torts (4th ed.) 211–212, § 39. That inference of NBC's negligence, to have been adequate, must have covered all of the necessary elements of negligence and have pointed to a breach by NBC of a duty owed to Ms. Street. *Idem.; Mooney v. Stainless Steel, Inc.*, C.A. 6th (1964), 338 F.2d 127, 131[7], certiorari denied (1965), 381 U.S. 925, 85 S.Ct. 1561, 14 L.Ed.2d 684. Unless she had demonstrated an inference of probability of NBC's responsibility to her because of the republication, as distinguished from a mere possibility, Ms. Street failed to make out her case sufficiently to withstand NBC's motion for a directed verdict. See 65A C.J.S. Negligence § 251(6), p. 792.

Ms. Street's original complaint in this lawsuit was " * * * nothing more than notice of [her] claim * * * " against NBC.

---

**8.** Had the issues been submitted to the jury, there was no direct or circumstantial evidence from which its members could have gauged whether Mr. McGreevey failed to exercise that degree of skill in preparing this script which a fair average of writers of motion-picture scripts exercise under similar circumstances, because the record was silent as to that average. " *.* * 'No man [or woman] is held by law to a higher degree of skill than the fair average of his profession or trade.' * * * " *Union Ry. Co. v. Williams*, C.A. 6th (1951), 187 F.2d 489, 492[9, 10], certiorari denied (1951), 342 U.S. 839, 72 S.Ct. 65, 96 L.Ed. 634, citing and quoting from *Sanford-Day Iron Works v. Moore* (1915), 132 Tenn. 709, 713, 179 S.W. 373.

**9.** Ms. Street is afforded no support in this contention by the fact that Mr. Zacchini, the "human cannonball", was awarded damages under a state claim against a television station which published his entire act without his consent after the broadcaster knew he was objecting thereto. *Zacchini v. Scripps-Howard Broadcasting Co., supra*, 433 U.S. at 563, 97 S.Ct. at 2851, 53 L.Ed.2d at 969. Mr. Justice White pointed out therein that the protection extended to the public media by the Constitution, First Amendment, in defamation cases (such as Ms. Street's) is delineated in *New York Times v. Sullivan, supra; Rosenbloom v. Metromedia, Inc.* (1971), 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296; *Gertz v. Robert Welch, Inc., supra*; and *Time, Inc. v. Firestone, supra*.

*Burke v. Fire Underwriters Association,* D.C.Mo. (1958), 21 F.R.D. 583, 584[4]; see also *Westlake v. Lucas,* C.A. 6th (1976), 537 F.2d 857, 858[3]. It was not until after the republication by NBC of this film, *viz.,* on April 27, 1977, that NBC had notice of Ms. Street's claim of libel; for, it was on that date that she specified *in haec verba* those portions of the motion-picture which she claimed libeled her.

■ Tennessee law requires a plaintiff in a libel action to set forth the exact language claimed to be defamatory, to put the publisher of it on notice of that which he is called upon to defend, *Lackey v. Metropolitan Life Ins. Co.,* C.A.Tenn. (1943), 26 Tenn.App. 564, 174 S.W.2d 575, 581–582[17], certiorari denied (1943); and, it is insufficient notice in Tennessee of the plaintiff's libel claim until the allegedly defamatory language *is* set forth *in haec verba. Idem.* Thus, six reasonable minds could have come to but one conclusion, after receiving instructions as to the applicable law in this regard, and that would have been necessarily that NBC was not on notice of Ms. Street's claim of libel before it republished this film.

NBC contended furthermore, that, even if NBC's personnel had investigated as Ms. Street urged they should have done, the evidence demonstrated that the result would have been the conclusion that the portrayal it republished of Ms. Street was fair, because it comported with that which Dr. Carter discovered in his own investigation of the facts for a period of 2½ years.[10] The dearth of evidence as to NBC's culpability herein, however, renders a consideration of that defense, as well as all other defenses of NBC moot.

■ It is settled that in a diversity and amount case, such as this tried before a federal judge in Tennessee, the federal judge is bound by Tennessee law in determining the sufficiency of the evidence. *O'Neill v. Kiledjian,* C.A. 6th (1975), 511 F.2d 511, 513[4]. Thus, the Court performed its duty

* * * to look to all the evidence, to take as true the evidence for the plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for the plaintiff, to allow all reasonable inferences from it in his [or her] favor; and if there is any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion for a directed verdict must be denied. * * *

*Idem.,* quoting from *Poe v. Atlantic Coast R. R. Co., supra,* 205 Tenn. at 284(2), 326 S.W.2d 461.

There was simply no evidence forming a probative basis for a finding by the jury that it was NBC which acted negligently and injured Ms. Street. Any literary license the witness Mr. McGreevey may have taken in portraying her dramatically was in no way attributable to NBC. This record is absolutely silent as to whether NBC either ratified, approved, encouraged, or otherwise adopted the statements emanating from the creativity of Mr. McGreevey in portraying Ms. Street.

He was engaged to write the script by Tomorrow; Tomorrow adopted that script for its independent production of the filmed program; and Tomorrow and Mr. McGreevey are solely responsible for its contents. The fact that NBC did not act to prevent Mr. McGreevey or Tomorrow from indulging literary license did not constitute ratification on its part. *Cf. Industrial Equipment Co. v. Emerson Elec. Co.,* C.A. 6th (1977), 544 F.2d 276, 289[8].

Ms. Street's claim herein that NBC libeled her was dismissed properly.

---

**10.** It was undisputed by Ms. Street that, apart from his erroneous factual assertion that she had died in 1961, there were no untruths or inaccuracies included in Dr. Carter's book.