**John J. GLENNON, Jr.,**
**Plaintiff–Appellee,**

v.

**DEAN WITTER REYNOLDS, INC.,**
**Defendant–Appellant.**

No. 95–5257.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1996.

Decided May 6, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied July 15, 1996.

Jeffrey L. Liddle, Ethan A. Brecher, Liddle, O'Connor, Finkelstein & Robinson, New York City, for John J. Glennon, Jr.

Betty G. Brooks, Washington, DC, for National Association Securities Dealers, Inc., amicus curiae.

Clisby Hall Barrow, Baker, Donelson, Bearman & Caldwell, Nashville, TN, Vincent J. LaGreca, New York City, Jay S. Bowen, Bowen, Riley, Warnock & Jacobson, Nashville, TN, for Dean Witter Reynolds, Inc.

Before: KENNEDY, WELLFORD, and MOORE, Circuit Judges.

KENNEDY, J., delivered the opinion of the court, in which MOORE, J., joined. WELLFORD, J. (p. 139), delivered a separate concurring opinion.

KENNEDY, Circuit Judge.

Defendant, Dean Witter Reynolds, Inc., appeals a District Court order denying its motion to vacate an arbitration decision adjudicating its disputes with plaintiff, John Glennon, a former employee. Defendant claims that the arbitration panel acted in manifest disregard of Tennessee law and public policy when it awarded plaintiff defamation damages, and that the limited federal judicial review of the arbitrators' award of punitive damages violates the due process clause of the Fifth Amendment. For the reasons set forth below, we AFFIRM.

## I. Facts

Defendant, a securities dealer, employed plaintiff as branch manager of its Nashville office and terminated him as the result of a compensation dispute. In his position as a

producing broker, plaintiff was entitled to a $2,500 annual expense stipend. Defendant inadvertently deposited that amount into plaintiff's account monthly between September of 1990 and May of 1991. Although plaintiff acknowledged that those amounts in excess of $2,500 were overpayments to which he was not entitled, he refused to return the money, claiming them as a set-off against monies defendant allegedly owed him for a finder's fee and a recruitment bonus. Asserting entitlement to the finder's fee and recruitment bonus, in August of 1991, plaintiff commenced an arbitration proceeding against defendant by filing a Statement of Claim with the National Association of Securities Dealers ("NASD"), the self-regulatory organization ("SRO") of which defendant was a member.

Defendant discharged plaintiff in October of 1991, and in November of 1991 completed and filed a Form U–5, Uniform Termination Notice for Securities Industry Registration, in accordance with NASD rules. The form inquired whether the terminated individual was "under internal review for fraud or wrongful taking of property, or violating investment-related statutes, regulations, rules or industry standards of conduct." In response to this question, defendant answered "yes."

Subsequently, plaintiff amended his arbitration demand, alleging that defendant defamed him by maliciously making the false "yes" answer on the Form U–5. Plaintiff sought compensatory and punitive damages as well as an order directing defendant to amend the Form U–5.

An NASD arbitration panel ruled that plaintiff was entitled to the finder's fee and recruitment bonus. It further found that the statements explaining Glennon's termination in the Form U–5 were defamatory and awarded him $728,250 in compensatory damages, $750,000 in punitive damages, and $213,000 in attorney fees. It also ordered Dean Witter to amend the Form U–5 so as to remove the defamatory explanation of Glennon's termination and replace it with an explanation that he had been terminated as a result of a compensation dispute. Dean Witter moved to vacate the award on a number

of grounds and Glennon filed a cross-motion to deny Dean Witter's motion to vacate and to confirm the award. Despite defendant's objections, the District Court confirmed the award.

On appeal, Dean Witter argues that (1) the arbitration panel acted in manifest disregard of the law when it failed to afford the defamatory statements on the Form U–5 an absolute privilege; (2) the arbitration panel acted in manifest disregard of the law and public policy when it awarded plaintiff defamation damages; and, (3) the District Court's limited review of the arbitrators award of punitive damages violates the due process clause of the Fifth Amendment. In his brief, plaintiff asks this Court to award him attorney fees and costs for what he alleges is a "frivolous appeal."

## II. Discussion

### A. Standard of Review

■ When reviewing a district court's decision to vacate or confirm an arbitration award, we review findings of fact for clear error and questions of law de novo. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros,* 70 F.3d 418, 420 (6th Cir.1995) (citing *First Options of Chicago, Inc. v. Kaplan,* —— U.S. ——, ——, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995)).

■ A federal court may set aside an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, only when certain statutory or judicially created grounds are presented. *Merrill Lynch, Pierce, Fenner & Smith,* 70 F.3d at 420. The FAA provides several statutory bases upon which a court may vacate an arbitration award. It states, in relevant part:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10. Absent circumstances indicating that the arbitration process was tainted by fraud, corruption, or arbitrator misconduct, a federal court may also vacate arbitration awards made "in manifest disregard of the law." *Merrill Lynch, Pierce, Fenner & Smith,* 70 F.3d at 421 (quoting *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). The manifest disregard of the law standard is very narrow; "[a] mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Merrill Lynch, Pierce, Fenner & Smith,* 70 F.3d at 421 (citation omitted). An arbitration panel only acts in manifest disregard of the law if the applicable legal principle is clear and well-settled and it refuses to follow that legal principle. *Id.*

### B. Privilege Afforded the Form U-5

■ Defendant first contends that the arbitration panel acted in manifest disregard of the law when it failed to afford its statements on the Form U-5 an absolute privilege. Defendant argues that because federal law required Dean Witter to file the Form U-5, it was an absolutely privileged communication. In support of its argument, Dean Witter relies on *Herzfeld & Stern, Inc. v. Beck,* 175 A.D.2d 689, 572 N.Y.S.2d 683 (1991). In that case, interpreting New York law, the court concluded that because an absolute privilege

attaches even to preliminary or investigatory stages of an administrative proceeding, the Form U-5 was absolutely privileged. *Id.* 572 N.Y.S.2d at 685. Because New York is not the proper choice of law in this case, we find that *Herzfeld & Stern, Inc.,* is not persuasive authority.

■ In federal question cases, a District Court entertaining pendent state claims should follow the choice of law rules of the forum state. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 681 (7th Cir.1986), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987); *see Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) (holding that, in diversity cases, the conflict of law rules applied by the federal court must conform to those of the state in which it sits); *see also Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 707 (7th Cir.1994) (finding it appropriate to apply state defamation law, not a federal common law of defamation, in cases that are arbitrated and then reviewed under the FAA). Because Tennessee is the forum state, the District Court properly held that an analysis of Tennessee choice-of-law principles is required to determine what state's law should be applied to plaintiff's defamation claim.

■ Tennessee choice of law rules dictate that Tennessee courts apply the law of the state with the most significant relationship to the occurrence and the parties. *Hataway v. McKinley,* 830 S.W.2d 53, 59 (Tenn. 1992). To determine which state has the most significant relationship to the occurrence and the parties, Tennessee courts consider those factors listed in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971):

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.; see Hataway,* 830 S.W.2d at 59.

■ After examining all the facts of this case, we conclude, as did the District Court,

that Tennessee law applies to this action, for Tennessee has the most significant relationship to the facts underlying the defamation claim and to the parties' involvement in the events forming the basis of the claim. The plaintiff was employed by defendant in its Nashville office. Thus, their relationship was centered in Tennessee. Moreover, plaintiff was domiciled in Tennessee at the time of occurrences that form the basis of his defamation claim and he continues to live in Tennessee. Furthermore, the evidence permitted the conclusion that the defamatory statements were published in Tennessee; the publication of the defamatory statements made it difficult for plaintiff to obtain employment in Tennessee. Finally, the information recorded on the Form U–5 was obtained from plaintiff's supervisor who was located in Nashville. Since Tennessee was the proper choice of law, we proceed to consider whether Tennessee law affords statements on the Form U–5 an absolute privilege.

 Tennessee law recognizes that statements relevant and pertinent to issues pending in, and made in the course of, judicial and administrative proceedings cannot form the basis of a defamation suit; those statements are absolutely privileged. *Lambdin Funeral Serv., Inc. v. Griffith,* 559 S.W.2d 791, 792 (Tenn.1978). This absolute privilege, however, does not extend to preliminary or investigatory stages of administrative proceedings;

> [t]o hold the doctrine of [absolute] privilege applicable to investigatory situations . . .—especially [those] so very preliminary in nature—would be to give license to those with ill will and malice toward others to harass them unmercifully simply by addressing their vituperative comments to law enforcement or other governmental investigatory authorities.

*Moore v. Bailey,* 628 S.W.2d 431, 436 (Tenn. Ct.App.1981); *see Spain v. Connolly,* 606 S.W.2d 540, 543 (Tenn.Ct.App.1980) (holding that judicial or administrative privilege does not protect preliminary and investigatory statements alleging police misconduct made to someone without authority to discipline or to review discipline imposed). Thus, whether

the Form U–5 is entitled to an absolute privilege turns on whether it is part of a judicial or administrative proceeding.

Securities law assigns the NASD quasi-judicial responsibilities of self-regulating stock exchanges and dealer associations in the over-the-counter markets. *See* 15 U.S.C. § 78*o*–3. The submission of a Form U–5, however, is not part of the NASD's quasi-judicial regulatory process. *See Baravati,* 28 F.3d at 708. Although the Form U–5 can trigger an investigation of a member or broker and may be used as evidence in a disciplinary proceeding, it is not part of a judicial proceeding. *Id.* Because the Form U–5 is merely a preliminary or investigatory formality, not part of the NASD's quasi-judicial regulatory process, we conclude that under Tennessee law the statements contained therein are not entitled to an absolute privilege. *See id.* (stating that "[t]o insulate the members from liability for the contents of their U–5s would be tantamount to allowing a member of the NASD to blackball a former employee from employment throughout the large sector of the industry that the membership of the association constitutes" and concluding that under Illinois law the Form U–5 is not entitled to an absolute privilege); *Fahnestock & Co., Inc. v. Waltman,* 935 F.2d 512, 516 (2d Cir.) (assuming that under New York law the Form U–5 is entitled to only a qualified privilege), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991). Therefore, the arbitration panel's failure to afford the statements on the Form U–5 an absolute privilege was not in manifest disregard of Tennessee law.

### C. Defamation Damages

 Next, defendant argues that the arbitration award presumed actual damages and punitive damages in manifest disregard of the First Amendment and Tennessee law, and in violation of Tennessee public policy. Defendant claims that the arbitration record does not establish that Glennon's reputation was damaged or that he suffered any pecuniary or special damages as a result of the alleged defamation.

 Under Tennessee law, the defamation plaintiff must prove actual damages; a

court may not presume them. *Emerson v. Garner*, 732 S.W.2d 613, 617 (Tenn.Ct.App. 1987). The District Court found that the arbitration panel was "entitled to draw a reasonable inference of compensatory damages from the testimony of Mr. Glennon that he has not been able to obtain another job on the same level at which he had been previously employed." We find that the District Court did not err in its conclusion that the arbitration record supported a finding that the defamatory statement on the Form U–5 precipitated Glennon's damages.

During the arbitration proceedings, plaintiff described the securities industries' use of the Form U–5 in hiring decisions. He testified that in his experience, which included experience as a branch manager, employers investigating potential employees regularly consult the Form U–5 data system. In fact, the Form U–5 is the means by which the NASD "administers an employment clearinghouse. By revealing the reason for the termination, the form gives other members of the association potentially valuable information concerning the availability and suitability of potential employees." *Baravati*, 28 F.3d at 708. Therefore, when a terminated representative of a member of the NASD seeks employment with another member, as a matter of industry practice, the potential employer consults the Form U–5 database.

Furthermore, the record reflected plaintiff's inability to obtain a job comparable to that that he held at Dean Witter. The arbitrators could have reasonably inferred that the difficulty was attributable to the publication of the Form U–5.

Because the arbitration proceedings presented evidence of publication of defamatory statements, damages, and a nexus between the publication of the defamatory statement and the damages suffered by the plaintiff, the arbitration panel's award of compensatory and punitive damages was not in manifest disregard of the law and, thus, the District Court's confirmation of those awards was not in error.

### D. Due Process and Punitive Damages

■ Finally, defendant argues that the limited judicial review of an arbitrator's award of punitive damages afforded by the FAA violates its Fifth Amendment right to due process of law. The District Court rejected appellant's due process claim on the bases that the appellant was a voluntary participant to the arbitration proceedings and that the NASD arbitration panel was not a state actor. The District Court further stated that because arbitrators do not share juries' bias against big business defendants, meaningful judicial review of arbitrators' punitive damage awards is unnecessary. We too conclude that in this case defendant is not entitled to review of the arbitration panel's punitive damage award beyond that provided by the FAA, but do so for reasons other than those offered by the District Court.

In support of its position that it is entitled to meaningful review of the arbitration panel's punitive damage award, defendant relies on *Honda Motor Co., Ltd. v. Oberg*, — U.S. —, 114 S.Ct. 2331, 129 L.Ed.2d 336 (1994). In that case, the petitioner argued that an Oregon jury award of punitive damages violated the due process clause of the Fourteenth Amendment because the jury's punitive damage award was excessive and because a state statute prohibited Oregon courts from correcting excessive verdicts. The challenged statute permitted Oregon courts to order a new trial in the absence of *any* evidence supporting a punitive damage award. However, it prohibited the courts from providing relief if the litigant challenged the *amount* of the punitive damage award. *Id.* at —, 114 S.Ct. at 2338. Reasoning that under the common law judges traditionally reviewed the size of punitive damage awards for arbitrary deprivations of property, the Court concluded that Oregon's statutory abrogation of that common law protection violated due process. *Id.* at — – —, 114 S.Ct. at 2337–39.

In this case, defendant does not argue that if there is *any* evidence to support the compensatory damage award or if there is *any* evidence to support a finding of malice, that the punitive damage award is excessive. Rather, defendant argues that because the record contains *no* evidence to support an

award of compensatory damages and *no* evidence of "intentional, fraudulent, malicious, or reckless conduct," there is no basis for an award of punitive damages.[1] *See* Dean Witter Reynolds, Inc.'s Memorandum of Law in Support of Motion to Vacate Arbitration Award in Whole or in Part 36–39.

For purposes of this discussion we assume without deciding that due process protections attach in this case, and therefore, proceed to consider whether the FAA affords meaningful review to defendant's claim that *no* evidence supports the arbitration panel's punitive damage award. We conclude that the manifest disregard of the law standard permits vacatur of those punitive damage awards that are supported by *no* evidence. Since that standard of review would allow vacatur of those awards, it is necessarily meaningful review of claims that *no* evidence supports an arbitration panel's punitive damage award.

Because we conclude that the FAA does in fact afford meaningful review of the defendant's claims here that *no* evidence supports the arbitration panel's punitive damage award, defendant is not in need of review of the arbitrators' punitive damage award beyond that provided by the FAA.[2] Therefore, we affirm the District Court's confirmation of the arbitration panel's punitive damage award.

### E. Attorneys Fees and Costs

Finally, plaintiff argues that this appeal is frivolous and requests attorney fees and costs under FED.R.APP.P. 38. Rule 38 requires that a party seeking fees and costs for

a frivolous appeal file a separate motion requesting that award. Because plaintiff has failed to file such a motion, his request is denied.

### III. Conclusion

For the reasons stated, we AFFIRM the decision of the District Court.

WELLFORD, Circuit Judge, concurring.

This case is unusual because Dean Witter, one of the principal members of NASD, which requires mandatory arbitration of employment disputes under the aegis of the Securities and Exchange Commission, contends that he is entitled to have this court review the $750,000 punitive damage award under a due process standard. Dean Witter also asserts that the compensatory award of $728,500 to Glennon for defamation constituted a manifest disregard of the law by the arbitration panel which was not required to set out a factual or legal basis for its various determinations. It is our normal experience that the non-NASD party is the one challenging the actions of a NASD arbitration panel.[1]

The district court made a thoughtful analysis of the number of issues in the dispute. The district judge confirmed the award and Glennon's right to enforce it, concluding that Tennessee law should be applied under the circumstances. I agree with the majority that this was not an erroneous determination. I also agree that the making out and filing of the U–5 form, which was the basis of the defamation claim, was not subject to the

---

1. The District Court did review the issue of malice under the manifest disregard of the law standard. It does not appear that defendant challenges on appeal the District Court's finding of evidence of malice.

2. In light of our conclusion that the FAA does in fact afford defendant's claim that no evidence supports the arbitration panel's punitive damage award meaningful review, it is unnecessary for us to decide whether NASD rules mandated defendant's arbitration of plaintiff's claims, whether the NASD arbitration panel was a governmental actor so as to trigger due process protections,

and, if due process protections attach, whether the FAA provides meaningful judicial review of the *amount* of a punitive damage award. Instead, we leave those questions for a case in which their resolution is necessary for disposition.

1. As pointed out by the district court: "[h]aving enthusiastically welcomed the enforcement of agreements to arbitrate, the securities industry might be expected not to encourage retrial of a case in federal court." *Rostad & Rostad Corp. v. Investment Management & Research,* 923 F.2d 694, 697 (9th Cir.1991).

claim of absolute privilege asserted by Dean Witter. Dean Witter is entitled to claim only a qualified privilege in its statements in the Form U–5.[2]

I write separately because I think it is a close question as to whether Glennon adequately proved, as is necessary under Tennessee law, his damages for defamation. No longer are defamation damages presumed under Tennessee law. *Emerson v. Garner,* 732 S.W.2d 613 (Tenn.Ct.App.1987). Plaintiff is required to plead and prove actual injury and causation in *Memphis Publishing Co. v. Nichols,* 569 S.W.2d 412 (Tenn.1978). Since we cannot effectively review the amount of the award of compensatory damages awarded by arbitration, if any actual injury has been proven, I am precluded from anything but an expression of dictum that the panel awards of damages and fees were exceedingly generous for Glennon under the circumstances of this case.

Although I find the damages issue not to be free of doubt, I cannot say that there was no evidence to support the awards in this case. We are constrained to a narrow review under the "manifest disregard" standard, and the arbitrators' decision was not "so patently contrary to established legal precedent" to set it aside. *Merrill Lynch, Pierce, Fenner & Smith v. Jaros,* 70 F.3d 418, 422 (6th Cir.1995).

Accordingly, I concur in the panel decision.

---

**2.** This is not a case where the employer is being held liable because it was wrong or mistaken in giving reasons for a discharge; it was held liable for deliberately and intentionally maligning Glennon in the U–5.