IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 18, 2019 Session

## RODNEY KILGORE v. STATE OF TENNESSEE

Appeal from the Tennessee Claims Commission
No. T20180132     William A. Young, Commissioner

_____

No. E2018-01790-COA-R3-CV

_____

This appeal arose from a claim filed with the Tennessee Claims Commission against the State of Tennessee ("the State"), seeking an award of damages for defamation allegedly committed by two attorneys employed by the State during the course of a separate federal litigation involving the claimant. The State filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim upon which relief could be granted, and the claimant filed, *inter alia*, a response objecting to the motion. Following a hearing, the Claims Commission dismissed the claim upon finding that the litigation privilege applied to protect the statements at issue and that the statements were not defamatory. The claimant has appealed. Having determined that the litigation privilege applies, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Arthur F. Knight, III, Knoxville, Tennessee, for the appellant, Rodney Kilgore.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Amber L. Seymour, Assistant Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I.  Factual and Procedural Background

The claimant, Rodney Kilgore ("Claimant"), is the owner of Monteagle Wrecker Service. Claimant was a co-plaintiff in two federal actions ("the federal litigation") filed

in the United States District Court for the Eastern District of Tennessee against officers of the Tennessee Highway Patrol ("THP").[1] The defendants in the federal litigation were represented by, as relevant here, two attorneys employed by the State of Tennessee: Deputy Attorney General Dawn Jordan and Assistant Attorney General Rebecca Lyford. During the discovery phase of the federal litigation, the defendants scheduled the deposition of Gregory Ruth, who had previously been employed by Claimant as a driver, for November 29, 2016. Mr. Ruth's two sons owned an interest in a business known as R&R Road Service. On November 23, 2016, the R&R Road Service building caught fire, causing significant damage.

On the morning of November 28, 2016, Ms. Jordan sent an email to Claimant's counsel in the federal litigation, Arthur F. Knight, III, and Russell Leonard, which stated in its entirety:

> Good morning, Art and Rusty.
>
> In case you have not already heard, someone torched Greg Ruth's children's business, R&R Road Service Wednesday night. This came after one of Mr. Kilgore's emissaries told Mr. Ruth to "watch out" for what said [sic] in this case. The timing does not seem to be coincidental.
>
> This is serious. I hope that your clients were not involved in this act. As you know, that would be federal witness intimidation, which is a crime even in a civil case. That said, we will be asking for a full investigation from the TBI and the US Attorney's Office.
>
> We have no intentions of stopping our discovery efforts in this matter. In fact, they will be stepped up. All future depositions, including the ones that WILL take place tomorrow, and will be held at a secure location with metal detectors and officers in attendance.
>
> We look forward to the motion hearing this afternoon.
>
> Dawn Jordan

Within minutes, Ms. Lyford sent an email to Claimant's counsel, stating:

---

[1] These cases were *Christine Adair et al. v. Johnny Hunter et al.*, No. 1:16-cv-00003 (E.D. Tenn.), and *Rodney Kilgore et al. v. Johnny Hunter et al.*, No. 1:16-cv-340 (E.D. Tenn.).

Gentlemen, Given what has happened, I am attempting to find a location with a metal detector for everyone who will show up at the depositions tomorrow. I am calling the Winchester Federal courthouse now.

These two email messages constitute the communication at issue in this defamation action ("the Emails"). Also on the morning of November 28, 2016, Mr. Knight responded to Ms. Jordan by sending an email message, asking, "Are you accusing me of something?" Ms. Jordan replied: "No, sir. I just did not know if you were aware. We will be calling various agencies this afternoon."

On November 29, 2016, the scheduled date of the deposition, Claimant, along with the other plaintiffs in the federal litigation, filed a motion requesting a protective order on all discovery of the "Mr. Kilgore" and any unnamed "emissaries" referenced in Ms. Jordan's November 28, 2016 email message. The plaintiffs attached to the motion the Emails. In the motion, Claimant's counsel noted that in the initial email message, Ms. Jordan did not specify the "Mr. Kilgore" to which she referred. The deposition proceeded as scheduled.[2]

On July 27, 2017, Claimant filed a notice of claim with the Division of Claims Administration, alleging that he had been defamed by Ms. Jordan and Ms. Lyford through the statements made in the Emails. *See* Tenn. Code Ann. § 9-8-307(a)(1)(R) (Supp. 2019) (providing the Claims Commission with "exclusive jurisdiction to determine all monetary claims against the state based on the acts or omissions of 'state employees'" with regard to "[c]laims for libel and/or slander where a state employee is determined to be acting within the scope of employment.")[3] In the initial claim, Claimant included as a co-claimant his father, William Kilgore, who was also a plaintiff in the federal litigation and owned a different wrecker service. Claimant then filed an amended claim on August 9, 2017, removing his father as a claimant and adding details concerning alleged publication of purportedly defamatory statements made by Ms. Jordan and Ms. Lyford.

The Division of Claims Administration transferred the claim to the Claims Commission ("the Commission") on October 25, 2017. *See* Tenn. Code Ann. § 9-8-402(c) (Supp. 2019) ("If the division fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the

---

[2] In an affidavit filed with the Claims Commission in this action, Claimant's counsel noted that in the federal litigation, the district court ultimately denied Claimant's and the other plaintiffs' motion for a protective order.

[3] "Libel and slander are both forms of defamation; libel being written defamation and slander being spoken defamation." *Davis v. The Tennessean*, 83 S.W.3d 125, 128 (Tenn. Ct. App. 2001).

administrative clerk of the claims commission."). The Commission entered an order governing the proceedings on November 2, 2017.

The State filed a motion to dismiss Claimant's defamation claim and a memorandum of law in support of the motion on November 30, 2017, asserting that the Emails were protected by the litigation privilege and that they were not defamatory. Claimant filed a response to the motion to dismiss on February 2, 2018, asserting that the litigation privilege did not apply in this case because the Emails were not sent in the course of a judicial proceeding and were unrelated to the subject matter of the federal litigation. His response to the motion to dismiss included a memorandum of facts and law with an attached appendix of exhibits, including, *inter alia*, a transcript from a preliminary hearing held in the Marion County General Sessions Court on February 22, 2017.

In his amended notice of claim, Claimant averred that during this preliminary hearing, "a Phillip Hamilton testified that Ms. Lyford informed him that [Claimant] burned a building and threatened someone's life." The transcript supports this description of the pertinent testimony presented by Mr. Hamilton, who had previously been employed by Claimant. The transcript indicates that the preliminary hearing was conducted upon the State's allegation that Claimant had intimidated a witness, Mr. Hamilton, following a deposition taken during discovery in the federal litigation. Claimant vehemently denies that any such witness intimidation occurred.[4]

Also included in these exhibits was a letter written by Knoxville attorney, Michael P. McGovern, which Claimant asserted evinced the damage done to his reputation by the allegedly defamatory emails. Mr. McGovern had sent the letter on February 28, 2017, to the president of the Tennessee Tow Truck Association ("TTTA"), offering his services in filing a separate lawsuit against the THP concerning the procedure that should be followed when the THP revised its Towing Services Manual. At the conclusion of the letter, Mr. McGovern mentioned the federal litigation involving Claimant, stating:

> One final comment: The *Monteagle Wrecker Service* litigation which was filed last year in federal court in Chattanooga, which I sent you a copy of, has absolutely nothing to do with the THP Manual or the UAPA [Uniform Administrative Procedures Act]. It is a very personal dispute between non-member [Claimant] and certain members of the THP. During the course of the litigation there have been serious allegations raised of sexual harassment, witness intimidation and the retaliatory arson of a business.

---

[4] Although the transcript demonstrates that the general sessions court bound the criminal charge over to the grand jury, an affidavit subsequently filed in this action by Mr. Leonard indicates that the charge was ultimately dismissed.

4

Last week, the court banned [Claimant] from attending further discovery depositions due to his disruptive behavior. I would urge, in the strongest terms, against TTTA intervening in that case in any manner. Even if [Claimant] is successful in his lawsuit, it will not resolve the issue to be addressed in the lawsuit I have proposed.

On March 6, 2018, the State filed a motion to exclude evidence outside of the pleadings, seeking to exclude three exhibits that had been attached to Claimant's response to the motion to dismiss: the preliminary hearing transcript with Mr. Hamilton's testimony, Mr. McGovern's letter, and an affidavit executed by Claimant's counsel. The State then filed a reply, reasserting its argument that the Emails were protected by the litigation privilege. On March 26, 2018, Claimant filed a motion for leave to file a second amended notice of claim, in which he addressed procedural arguments made by the State and reasserted his argument that the litigation privilege was not available to the State. He noted in this motion that his first amended notice was filed when the claim was still with the Division of Claims Administration, with the effect that this proposed amendment would be the first since the transfer to the Commission. Claimant then filed a motion requesting leave to file a sur-reply.

On June 1, 2018, the Commission conducted a hearing on all pending motions. In an order entered July 2, 2018, the Commission granted Claimant's motions for leave to file a second amended notice of claim and a sur-reply; overruled, without prejudice, the State's motion to exclude evidence outside the pleadings; allowed the State time to file any supplemental response to Claimant's sur-reply; and took the State's motion to dismiss under advisement. Claimant's second amended notice of claim, ultimately filed with his sur-reply on July 19, 2018, was substantially the same as his previous notice of claim with the additional assertion that Ms. Jordan and Ms. Lyford were acting within the course and scope of their employment with the State when they sent the Emails. He also attached, *inter alia*, the transcript of the preliminary hearing in general sessions court and the letter sent by Mr. McGovern. The State filed a "Motion to Dismiss Second Amended Complaint And/or Response to Sur Reply," and Claimant filed a response.

On September 17, 2018, the Commission entered an order granting the State's motion to dismiss. The Commission specifically found that it was not necessary for the State's motion to dismiss to be converted to a motion for summary judgment and accordingly excluded from consideration some exhibits concerning the federal litigation that had been attached to pleadings. The Commission considered the following exhibits that had been attached to Claimant's Second Amended Notice of Claim: the Emails, the preliminary hearing transcript from general sessions court, and the letter written by Mr. McGovern. The Commission also considered the two complaints initially filed in the federal litigation, which, as the Commission noted, were specifically referenced in

Claimant's Second Amended Notice of Claim. In dismissing this defamation action, the Commission found that the Emails were protected by the litigation privilege and were not defamatory. Claimant timely appealed.

## II. Issues Presented

Claimant has presented two issues on appeal, which we have restated as follows:

1.      Whether the Commission erred in determining that the Emails were protected by the litigation privilege.

2.      Whether the Commission erred in determining that the Emails were not defamatory.

## III. Standard of Review

Neither party has raised an issue concerning which items attached to the pleadings the Commission considered or the Commission's decision to proceed with the State's motion as a Rule 12.02(6) motion to dismiss. Generally, "[i]f matters outside the pleadings are presented in conjunction with either a Rule 12.02(6) motion [to dismiss] or a Rule 12.03 motion [for judgment on the pleadings] and the trial court does not exclude those matters, the court must treat such motions as motions for summary judgment and dispose of them as provided in Rule 56." *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 786 (Tenn. Ct. App. 2007).

In determining that it was not necessary to convert the State's motion to dismiss to a motion for summary judgment, the Commission specifically found that all of the items it considered were "incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, or an exhibit attached to the Complaint whose authenticity is unquestioned." In so finding, the Commission quoted *Western Express, Inc. v. Brentwood Servs., Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *3 (Tenn. Ct. App. Oct. 26, 2009) (quoting *Ind. State Dist. Council of Laborers v. Brukardt*, No. M2007-02271-COA-R3-CV, 2009 WL 426237, at *8 (Tenn. Ct. App. Feb. 19, 2009) (delineating exceptions to the general rule). Upon review, we determine that the Commission properly considered the items noted and that such consideration did not necessitate converting the motion to dismiss to a motion for summary judgment.

As our Supreme Court has explained with regard to motions seeking dismissal of a complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6):

6

A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'"

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (internal citations omitted).

## IV. Litigation Privilege

Claimant contends that the Commission erred by determining that the Emails were protected from a defamation claim by the litigation privilege. The State contends that the Commission properly found that the litigation privilege applied because the Emails were sent during the course of a judicial proceeding and were relevant to that proceeding. Upon careful review of the record and applicable authorities, we conclude that the Commission properly found that the Emails were absolutely protected by the litigation privilege.

As our Supreme Court has explained concerning defamation claims generally:

To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See* Restatement (Second) of Torts § 580 B (1977); *Press, Inc. v. Verran*, 569 S.W.2d 435, 442 (Tenn. 1978). "Publication" is a term of art meaning the communication of defamatory matter to a third person. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994).

7

*Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571-72 (Tenn. 1999).

However, "[t]here are two types of privileges that can be raised as a defense in a defamation case, absolute and qualified." *Simpson Strong-Tie Co., Inc. v. Stewart, Estes & Donnell*, 232 S.W.3d 18, 22 (Tenn. 2007). The litigation privilege at issue here is absolute, meaning that it is "in effect, a complete immunity" and "is not defeated by the defendant's malice, ill-will, or improper purpose in publishing the defamatory communication." *Id.* (contrasting the litigation privilege with a qualified or conditional privilege, which "may be defeated if the defamatory publication was made with malice, ill-will, or for an improper purpose") (footnote omitted).

Our Supreme Court recently described the rationale for the development of privileges providing defenses to defamation as follows in relevant part:

> This appeal demonstrates the tension that exists between two competing social commodities: reputation and information. Protecting the first commodity are defamation lawsuits, which enable aggrieved individuals to seek redress from false statements of fact that impugn their reputations. In the 1966 case <u>Rosenblatt v. Baer</u>, 383 U.S. 75, 92, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966) (Stewart, J., concurring), former United States Supreme Court Justice Potter Stewart emphasized the importance of protecting individuals from reputational harm, noting that: "The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." The danger posed by defamation lawsuits is that, if unrestrained, these lawsuits may obstruct access to the second commodity, information. For this reason, courts have developed a variety of privileges that provide defenses to defamation claims even when the accused actually defamed the accuser. *See generally* Restatement (Second) of Torts §§ 583-612 (1977).

*Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 211 (Tenn. 2019) (proceeding to analyze application of the fair report privilege as a qualified privilege).

In this case, the Commission particularly relied on our Supreme Court's decision in *Jones v. Trice*, 360 S.W.2d 48 (Tenn. 1962), and this Court's decision in *Issa v. Benson*, 420 S.W.3d 23 (Tenn. Ct. App. 2013), in finding that the litigation privilege applied. In *Issa*, this Court quoted with approval the following summary of the litigation privilege in Tennessee as provided in *Jones* and its progeny:

8

This state further recognizes that "statements made in the course of judicial proceedings which are relevant and pertinent to the issues are absolutely privileged and therefore cannot be used as a basis for a libel action for damages." *Jones*, [360 S.W.2d at 50]; *see also Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 159 (Tenn. Ct. App. 1997). This is true even if the statements are "known to be false or even malicious." *Jones*, 360 S.W.2d at 50 (citing *Hayslip v. Wellford* [195 Tenn. 621], 263 S.W.2d 136 (Tenn. 1953)). The policy underlying this rule is

> that access to the judicial process, freedom to institute an action, or defend, or participate therein without fear of the burden of being sued for defamation is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of an individual to a legal remedy where he [or she] has been wronged thereby.

*Jones*, 360 S.W.2d at 51. *Myers* also expressly stands for the proposition that "communications preliminary to proposed or pending litigation" are absolutely privileged. *Myers*, 959 S.W.[2d] at 161 (quoting Restatement of Torts § 587).

*Issa*, 420 S.W.3d at 28-29 (quoting *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at *7-8 (Tenn. Ct. App. Mar. 31, 2008)). *See Jones*, 360 S.W.2d at 52 ("[A] statement by a judge, witness, counsel, or party, to be absolutely privileged, must meet two conditions, viz: (1) It must be in the course of a judicial proceeding, and (2) it must be pertinent or relevant to the issue involved in said judicial proceeding.").

In this action, the Commission specifically found as follows in pertinent part:

The Commission finds and concludes that the litigation privilege applies to [the Emails]. Giving careful consideration to the "motion to dismiss" standard, the Commission, therefore respectfully concludes that, based upon the litigation privilege, as relates to [the Emails], the Claimant can prove no set of facts in support of the claim that would entitle Claimant to relief as against the [State] based upon these communications, and that the Second Amended Notice of Claim fails to state a cause of action upon which relief can be granted.

In this claim, the [E]mails related to and were relevant and pertinent to the federal litigation, namely discovery. The discovery process is an integral part of our judicial system and the administration of justice is

9

dependent upon, among other things, the discovery process working smoothly, safely, and efficiently. Certainly, in the opinion of this Commissioner, the discovery process, including matters preliminary to it (for instance, logistical decisions and arrangements, including those potentially related to safety concerns) are so involved in the judicial process such that the litigation privilege should and does clearly apply to "discovery" matters or related issues or concerns, whether ultimately those issues or concerns are determined to be well-founded or not. In the opinion of the undersigned, this concept would apply to, as well, the arranging for and preparation for depositions and any communications relating thereto. Discovery and depositions are generally and specifically addressed in the Federal Rules of Civil Procedure and the Tennessee Rules of Civil Procedure, as well as being addressed in various iterations of local rules of court. The courts have ultimate control over discovery. Greg Ruth was subpoenaed as a witness. The [E]mails complained of and alleged to be defamatory related directly to "our discovery efforts in this matter." They related to logistics in regard to upcoming depositions. They related to concerns of safety in upcoming depositions, whether those concerns were ultimately determined to be well-founded or not. The [initial] email stated that the depositions "will be held at a secure location with metal detectors and officers in attendance." The [E]mails were directed by [the State's] counsel to other counsel in the federal litigation.

Using the *Jones* standard, the Commission concludes that the communications complained of, [the Emails], are clearly not "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety." *Jones*, [360 S.W.2d at 54], [quoting] 33 Am. Jur. Page 146, Section 150. The [E]mails are related to the litigation and to the portion of the litigation concerning discovery and depositions.

Giving careful consideration to the applicable legal authorities, especially to the *Jones* case, the undersigned concludes that this is exactly the type of situation to which *Jones* is applicable. The policy reasons espoused in *Jones* and its progeny support the proposition that counsel should be able to communicate openly, frankly, and even aggressively with each other without fear of being sued. The communications in this claim fall within the parameters of the policy which has been consistently articulated by the courts of this State.

10

(Internal citations to record and footnote omitted.) We agree with the Commission on this issue.

The first condition that must be met for the statements within the Emails to be absolutely privileged is that they must have been made "in the course of a judicial proceeding." *See Jones*, 360 S.W.2d at 52. While acknowledging that the Emails were "somewhat related to the overarching legal proceeding," Claimant asserts that the statements in the Emails were not made as part of a judicial proceeding because they "were not made during the course of a trial, hearing, or the deposition itself." We find this position unavailing.

As noted in *Issa*, this Court previously has found that "*Myers* also expressly stands for the proposition that 'communications preliminary to proposed or pending litigation' are absolutely privileged." *Issa*, 420 S.W.3d at 29 (quoting *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at *7-8 (Tenn. Ct. App. Mar. 31, 2008) (in turn quoting *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 161 (Tenn. Ct. App. 1997). In *Myers v. Pickering Firm, Inc.*, this Court held that the defendant firm's report, which had been prepared as a consultant's review of the plaintiff architectural firm's projects, was protected by the litigation privilege because the report was "an assimilation of the information compiled by various representatives of [the defendant firm] in their role as expert witnesses in the chancery court litigation and in anticipation of their upcoming testimony in that proceeding." 959 S.W.2d at 160-61. Consequently, although the consultant's report in *Myers*, which had been commissioned by the projects' owner approximately one month after the owner filed suit against the architectural firm, had not been compiled during a trial, hearing, or deposition, the fact that the report was produced in preparation for upcoming litigation meant that it had been prepared in the course of a judicial proceeding and thereby satisfied the first condition to bring it under the protection of the litigation privilege. *See id.*

In *Issa*, this Court determined that the litigation privilege applied to protect an oral statement made by the defendant, a City of Chattanooga councilman, in response to a warning that the limited liability corporation, in which the plaintiff was a shareholder, would sue the city and the city council. *Issa*, 420 S.W.3d at 29. ("[The defendant's] statement was a communication preliminary to proposed litigation, and as such fell within the litigation privilege."). As a point of contrast, this Court determined in *Phillips v. Woods*, No. E2007-00697-COA-R3-CV, 2008 WL 836161, at *10 (Tenn. Ct. App. Mar. 31, 2008), that the filing of a deed "clearly made with the hope that no judicial proceeding would occur" "was not a part of a judicial proceeding so as to clothe the statements made in the deed with absolute immunity from suit for libel of title."

In the case at bar, when the Emails were sent by Ms. Jordan and Ms. Lyford to Claimant's counsel, the federal litigation had already been initiated by Claimant, and the litigation had entered the discovery phase with a deposition scheduled for the next day. Claimant is essentially positing that discovery related to litigation occurs outside of a judicial proceeding. We disagree. *See, e.g.*, *B & B Enters. of Wilson Cty. v. City of Lebanon*, 318 S.W.3d 839, 848 (Tenn. 2010) ("[T]he judicial proceedings began when [the petitioner] filed its petition for common-law writ of certiorari."); *Ballard v. Herzke*, 924 S.W.2d 652, 657 (Tenn. 1996) (analyzing the intervening plaintiffs' request to seek modification of a protective order covering discovery responses as a request for access to "judicial proceedings or records"); *Swift v. Campbell*, 159 S.W.3d 565, 575 (Tenn. Ct. App. 2004) (addressing, *inter alia*, "the question of whether the courts of this state should allow the public records statute to be used to circumvent the rules of discovery governing civil and criminal judicial proceedings"); *Caldwell v. Baptist Mem'l Hosp.*, No. W2015-01076-COA-R10-CV, 2016 WL 3226431, at *2 (Tenn. Ct. App. June 3, 2016) (noting that "Tennessee Code Annotated § 29-26-121(f) allows for the disclosure of protected health care information in ex parte interviews conducted during judicial proceedings").

In support of his argument that the Emails were not sent during the course of a judicial proceeding, Claimant relies on this Court's decision in *Moore v. Bailey*, 628 S.W.2d 431 (Tenn. Ct. App. 1981). In *Moore*, this Court affirmed a jury verdict in favor of the plaintiff, an environmentalist with the Tennessee Department of Public Health, on his defamation claim concerning statements the defendant had made when he contacted the state inspector general with allegations against the plaintiff and subsequently conveyed accusations of misconduct against the plaintiff to investigators. *Moore*, 628 S.W.2d at 432. The *Moore* Court determined that the litigation privilege did not apply to protect the statements at issue because those statements were made during an "investigatory situation[] . . . so very preliminary in nature." *Id.* at 436. We find the factual situation and procedural posture in *Moore* to be highly factually distinguishable from this case because the Emails at issue here were sent during the discovery phase of the federal litigation already initiated by Claimant. We agree with the Commission's reasoning that in this case, "the arranging for and preparation for depositions and any communications relating thereto" were part of the discovery process and were therefore made in the course of a judicial proceeding, specifically the federal litigation related to this case.

The second and final condition that must be met for the statements within the Emails to be absolutely privileged is that they must be "pertinent or relevant to the issue involved" in the judicial proceeding. *See Jones*, 360 S.W.2d at 52. In *Jones*, our Supreme Court further explained the definition of pertinence or relevance in the context of the litigation privilege as follows:

12

As to the degree of relevancy or pertinency necessary to make alleged defamatory matter privileged, the courts favor a liberal rule. The matter to which the privilege does not extend must be so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety.

*Jones*, 360 S.W.2d at 53-54 (quoting 33 Am. Jur. 146, § 150).

Acknowledging that Attorney Lyford's email message may be "more relevant" to depositions in the federal litigation because it provided "the potential new locations for the depositions," Claimant asserts that Attorney Jordan's email message only "vaguely reference[d] the fact that discovery is ongoing" and that the first two paragraphs of the message were devoted to "irrelevant" accusations against Claimant. However, as the Commission noted, Mr. Ruth had been subpoenaed as a witness in the federal litigation. The State's counsel's statements about the fire that damaged Mr. Ruth's sons' business were related to concerns about possible interference with Mr. Ruth as a subpoenaed witness.

Upon careful review of the statements in the Emails, we agree with the Commission that in addition to addressing the logistics of upcoming depositions, the statements were "related to concerns of safety in upcoming depositions, whether those concerns were ultimately determined to be well-founded or not." Given our Supreme Court's "liberal application of the absolute privilege accorded to publication of defamatory matters in connection with judicial proceedings," *Myers*, 959 S.W.2d at 161 (citing *Jones*, 360 S.W.2d at 48), the Commission properly determined that the Emails were not "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt [their] irrelevancy and impropriety," *see Jones*, 360 S.W.2d at 54 (quoting 33 Am. Jur. 146 § 150).[5] The Commission did not err in finding that the litigation privilege was applicable to protect the Emails from this defamation claim.

## V. Alleged Defamatory Nature of the Emails

Although the Commission found that the Emails were absolutely protected by the litigation privilege and stated in its final order that it was "dismissing the claim on the

---

[5] We further determine Claimant's partial reliance on a North Carolina federal district court memorandum opinion, *Castro v. Goggins*, No. 1:16CV10, 2016 WL 7217282 (M.D.N.C. Dec. 12, 2010), to be unavailing. Although our review of *Castro* reveals that the district court's application of Tennessee defamation law as to relevance to the judicial proceeding is distinguishable from application of the law in the instant action, we note also that a federal district court case is but persuasive, not controlling, authority for Tennessee state appellate courts. *See Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 871 (Tenn. 2010).

13

basis of litigation privilege," the Commission proceeded to address, "for the purposes of completeness," whether the Emails were defamatory. The Commission ultimately found that the messages were "not capable of defamatory meaning." On appeal, Claimant asserts that the Commission erred in so finding. Inasmuch as the litigation privilege is absolute, *see Simpson Strong-Tie*, 232 S.W.3d at 22, and we have determined that the litigation privilege applies to protect the Emails, we further determine that the issue of whether the messages were defamatory in nature is pretermitted as moot.

## VI. Conclusion

For the reasons stated above, we affirm the Commission's judgment dismissing Claimant's defamation action. This case is remanded to the Commission, pursuant to applicable law, for enforcement of the Commission's judgment and collection of costs assessed below. The costs on appeal are assessed against the appellant, Rodney Kilgore.

_____
THOMAS R. FRIERSON, II, JUDGE